Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Iva Keasey*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Iva Keasey,<br><br>            Plaintiff,<br><br>      v.<br><br>Aetna Life Insurance Company; Southwest Airlines, Co.; Southwest Airlines, Co. Disability Plan,<br><br>            Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Iva Keasey (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Southwest Airlines, Co. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy which was fully insured by Aetna Life Insurance Company (hereinafter referred to as "Aetna"). The specific Aetna long term disability group insurance policy is known as Group Policy No.: GP-881927 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long term disability insurance for its employees. Upon information and belief, the Aetna Policy may have been included in and part of an employee benefit plan, specifically named the Southwest Airlines, Co. Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Aetna functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Aetna.

5. Upon information and belief, Plaintiff alleges Aetna operated under a conflict of interest in evaluating her long term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the

payor of benefits. Aetna's conflict existed in that if it found Plaintiff was disabled, it was then liable for the payment of her disability benefits.

6. The Company, Aetna and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to from the Plan and any other Company Plan, as a result of being found disabled in this action.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about December 22, 2011, due to serious medical conditions and was unable to work in her designated occupation as a Flight Attendant. Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff filed a claim for short term disability benefits which was approved by Aetna, and those benefits have been paid and exhausted. Following the exhaustion of her short term disability benefits, Plaintiff then filed for long term disability benefits under the relevant Policy which was administered by Aetna, meaning it made the decision with regard to whether Plaintiff was disabled.

1    11.    The Aetna Policy provides the following definition of disability pertaining to long term disability benefits:

"From the date that you first become disabled; and until Monthly Benefits are payable for 24 months; you will be deemed to be disabled on any day if" solely because of: disease or injury; either of the following applies to you:

- you are not able to perform the material duties of your own occupation; or
- your earnings from working in your own occupation are 80% or less of: your adjusted predisability earnings.

After the first 24 months that any Monthly Benefit is payable during a period of disability; you will be deemed to be disabled on any day if; solely because of: disease or injury; either of the following applies to you:

- you are not able to work at any reasonable occupation; or
- your earnings from working in any occupation are 50% or less of: your adjusted predisability earnings."

12.    In support of her claim for long term disability benefits, Plaintiff submitted to Aetna medical questionnaires and medical records from her treating physicians which supported her allegation that she met the definition of disability as defined in the relevant Policy.

13.    During the administrative review of Plaintiff's claim, she was approved for and is receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

14.    The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of January 1, 2012.  Plaintiff submitted to Aetna a copy of her November 20, 2012 Notice of Award from the SSA.  The evidence supporting Plaintiff's claim was so persuasive that SSA found her disabled without her even needing to attend a hearing before an Administrative Law Judge.

15.     The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definitions of disability set forth for long term disability benefits in the Policy for the first 24 months.  SSA's definition of disability is substantially similar to the Policy's definition of disability which is required to be met in order to obtain long term disability benefits after the first 24 months of disability.  Therefore, the SSA's approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to the reasonableness and lawfulness of Aetna's decision to terminate and deny Plaintiff's benefits.  Plaintiff alleges Aetna did not apply the proper weight to SSA's approval as a result of it failing to properly evaluate, compare and contrast the reasons why SSA approved her claim.

16.     Aetna initially approved Plaintiff's long term disability claim and paid Plaintiff disability benefits through March 21, 2014, at which time Aetna terminated Plaintiff's disability benefits without any documentation that her medical condition had improved in any way that would allow her to return to work.

17.     Upon information and belief, as part of a review of Plaintiff's claim for long term disability benefits, Aetna obtained a medical records only "paper review" of Plaintiff's claim from a physician consultant who Plaintiff believes may be an employee of Aetna, Martin Mendelssohn, M.D.  In the alternative, Dr. Mendelssohn may be a medical consultant for Aetna and may be regularly or frequently retained to perform medical records reviews.

18.     As a result of his relationship with Aetna, Plaintiff alleges Dr. Mendelssohn may have an incentive to protect either his employment and/or his consulting relationship with Aetna by providing medical records only paper reviews, which selectively review or

ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to Aetna and which supported the denial of Plaintiff's claim.

19. Plaintiff questions the independence, impartiality and bias of Aetna's own employee to fully and fairly review her claim and she alleges Dr. Mendelssohn's opinions are adversarial because of his conflict of interest as an Aetna employee. Plaintiff alleges Aetna's financial conflict of interest is a motivating factor as to why it referred Plaintiff's claim to its own employee for review.

20. In a letter dated March 18, 2014, Aetna informed Plaintiff it was terminating her long term disability benefits effective March 21, 2014.

21. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Aetna's March 18, 2014, denial and submitted additional medical documentation supporting her disability claim and entitlement to benefits from the relevant policy.

22. Upon information and belief, as part of its review of Plaintiff's claim for long term disability benefits, Aetna again obtained medical records only "paper reviews" from two (2) physician consultants who Plaintiff believes may either be employees and/or medical consultants of Aetna, Elana Mendelssohn, Psy.D. and Robert Swotinsky, M.D.

23. As a result of their relationship with Aetna, Plaintiff alleges Drs. Mendelssohn and Swotinsky may have an incentive to protect their consulting relationships with Aetna by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to Aetna and which supported the denial of Plaintiff's claim.

24. As referenced *supra,* Plaintiff questions the independence, impartiality and bias of Aetna's own employees and/or medical consultants who may be regularly retained to fully and fairly review her claim and she believes Drs. Mendelssohn and Swotinsky's

1  opinions are adversarial because of their relationship with Aetna which may create a conflict
2  of interest.  Plaintiff believes Aetna's financial conflict of interest is a motivating factor as
3  to why it referred Plaintiff's claim to its own employees and/or to medical consultants it
4  regularly retains during both administrative levels of review.

5        25.    Prior to rendering its final denial in Plaintiff's claim, Aetna never shared with
6  Plaintiff the reports authored by Drs. Mendelssohn and/or Swotinsky and never engaged
7  Plaintiff in a dialogue so she could either respond to the reports and/or perfect her claim.
8  Aetna's failure to provide Plaintiff with the opportunity to respond to Drs. Mendelssohn and
9  Swotinsky's reports precluded a full and fair review pursuant to ERISA.  Aetna's action in
10 failing to disclose these reports and to engage her in a dialogue is an ERISA procedural
11 violation and a violation of Ninth Circuit case law.

12       26.    In a letter dated January 8, 2015, Aetna notified Plaintiff it had denied her
13 claim for long term disability benefits under the Policy.  In the letter, Aetna also notified
14 Plaintiff she had exhausted her administrative levels of review and could file a civil action
15 lawsuit in federal court pursuant to ERISA.

16       27.    Aetna informed Plaintiff in its January 8, 2015 denial letter that during a peer
17 to peer conversation with Dr. Swotinksy, her treating physician suggested to Dr. Swotinksy
18 that Plaintiff should undergo a Functional Capacity Evaluation to obtain objective
19 information regarding her restrictions and limitations in a work environment.

20       28.    Plaintiff was never made aware by Dr. Swotinsky or Aetna that her own
21 treating physician suggested she undergo a Functional Capacity Evaluation, nor was such an
22 evaluation scheduled on her behalf by Aetna.

23       29.    Following Aetna's January 8, 2015 denial of her claim, Plaintiff submitted
24 additional medical evidence to Aetna and requested for Aetna to reopen her long term

25
26

disability claim and consider the evidence submitted.  The evidence included a Functional Capacity Evaluation (report) dated March 11, 2015 that Plaintiff underwent as a result of her doctor's conversation with Aetna's doctor.  After an extensive several hour evaluation, a qualified physical therapist who administered the test concluded, "…[Plaintiff] would not be able to perform <u>sedentary</u> work consistently on a regular, full-time basis." (original emphasis).

30. At the time of filing this complaint, Aetna has not informed Plaintiff whether or not it will agree to reopen her long term disability claim and consider the additional evidence that was submitted in her claim.

31. Upon information and belief, Aetna's January 8, 2015 denial letter confirms it failed to provide a full and fair review, and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence.

32. In evaluating Plaintiff's claim on appeal, Aetna had an obligation pursuant to ERISA to administer it "solely in her best interests and other participants" which it failed to do. [1]

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

33. Aetna failed to adequately investigate her claim and failed to engage Plaintiff in a dialogue during the appeal of her claims with regard to what evidence was necessary so Plaintiff could perfect her appeal and claims. Aetna's failure to investigate the claims and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim violates ERISA, Ninth Circuit case law and is a reason she did not receive a full and fair review.

34. Plaintiff believes Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to inform Plaintiff that her own treating physician suggested she undergo a Functional Capacity Evaluation in order to perfect her claim; failing to have Plaintiff's claim reviewed by a medical professional who is independent and a non-Aetna employee; failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claim; failing to adequately consider the approval of Plaintiff's Social Security disability claim; failing to have her examined by a medical professional when the policy allowed for one and it was suggested by her own treating physician; providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or de-emphasizing medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claims and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

35. Plaintiff alleges a reason Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to

its conflict of interest that manifested as a result of the dual roles Aetna undertook as decision maker and payor of benefits and provided it with a financial incentive to deny her claim.

36. Plaintiff is entitled to discovery regarding Aetna's aforementioned conflicts of interest and any individual who was involved in and/or reviewed her claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest and/or ERISA procedural violation which may have impacted or influenced Aetna's decisions to deny her claim.

37. With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Aetna as referenced herein are so flagrant they justify *de novo* review.

38. As a direct result of Aetna's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan, any other Company Plan and/or the Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

39. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

40.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order requiring Defendants to pay Plaintiff her long term disability benefits and any other employee benefits she may be entitled to from the Plan or any other relevant Company Plan as a result of being found disabled pursuant to the Policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B.     For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for the termination of benefits;

C.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.     For such other and further relief as the Court deems just and proper.

DATED this 10th day of June, 2015.

SCOTT E. DAVIS. P.C.

By:     */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff